IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SMART COMMUNICATIONS HOLDING, INC., <br><br> Plaintiff <br><br> v. <br><br> VENDENGINE, INC., <br><br> Defendant. | CIVIL ACTION NO. 3:20-cv-00111 <br><br> **JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Smart Communications Holding, Inc. ("Smart Communications"), for its complaint for damages and injunctive relief against defendant VendEngine, Inc. ("VendEngine"), hereby alleges as follows:

## NATURE OF THE ACTION

1. This is an action for injunctive relief enforcing the non-use provisions of the parties' confidentiality and mutual non-disclosure agreement ("the Agreement"), and for injunctive relief and damages arising out of VendEngine's breach of the Agreement, tortious interference with prospective business relationship, violation of the Tennessee Uniform Trade Secrets Act, misappropriation of Smart Communications' trade secrets, unjust enrichment, and negligent misrepresentation. Smart Communications has commenced this lawsuit to protect its legitimate business interests, to enjoin VendEngine's ongoing unlawful and unfair business conduct, and to recover significant losses caused by VendEngine's conduct.

## THE PARTIES

2. Plaintiff Smart Communications is a Florida corporation having a principal place of business at 10491 72nd Street, Seminole, FL 33777.

1

3. Defendant VendEngine is a Tennessee corporation with a its principal place of business at 101 Creekside Crossing, Suite 1700-PMB 111, Brentwood, TN 37207.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

5. This Court has personal jurisdiction over VendEngine by virtue of the fact that it resides in this judicial district and regularly transacts business in this judicial district by, among other things, offering its products and services to the government and customers located in this judicial district.

6. Venue is proper under 28 U.S.C. §§ 1391(b)(2) and (c)(2) because the events and/or omissions giving rise to this action occurred in this judicial district and because VendEngine resides in this judicial district.

## FACTUAL BACKGROUND

7. Smart Communications is a pioneer in the development of and a national leader in the provision of inmate-communication services. For example, Smart Communications developed and provided the first kiosk-based electronic messaging system for correctional-facility inmates, and created groundbreaking postal-mail-elimination technology for correctional facilities.

8. Smart Communications' post-mail-elimination technology is the subject of numerous pending U.S. patent applications and one issued patent.

9. Smart Communications' products and systems utilizing its patented technology are branded MailGuard® and MailGuard Postal Mail Elimination®.

10. Postal mail is the number-one method for sneaking illegal drugs, contraband, and secret communications into correctional facilities. Thus, the elimination of postal mail is critical to the safe operation of correctional facilities in that it significantly reduces, and in many cases altogether stops, the infiltration of those undesirable and potentially dangerous items.

11. Accordingly, correctional facilities throughout the United States—from small county jails to larger state-run facilities housing thousands of inmates—utilize Smart Communications' MailGuard® technology.

12. Under the authority of the Tennessee Code Annotated § 41-4-140, the Board of Control of the Tennessee Corrections Institute is required to establish minimum standards for detention facilities in the state. According to the Rules of the Tennessee Corrections Institute Minimum Standards for Local Adult Correctional Facilities § 1400-01.11, "Both incoming and outgoing mail shall be inspected for contraband items prior to delivery, unless received from the courts, attorney of record, or public officials, where the mail shall be opened in the presence of the inmate."

13. In mid-2017, Smart Communications met with Rutherford County and Rutherford County Adult Detention Center officials at the Rutherford County Adult Detention Center regarding Smart Communications' electronic-messaging and MailGuard Postal Mail Elimination® system. During that meeting, Smart Communications performed a demonstration of its technology, including a detailed description of how its MailGuard® system worked, and informed the Rutherford County officials and the Rutherford County Adult Detention Center that its system was covered by the patent application that ultimately issued as a U.S. patent.

14. At the conclusion of that 2017 meeting, Rutherford County and the Rutherford County Adult Detention Center's leadership indicated that they were thoroughly impressed with

3

Smart Communications' technology, and they expressed a strong desire to implement Smart Communications' MailGuard Postal Mail Elimination® and electronic-messaging system. Thus, the Rutherford County Adult Detention Center instructed VendEngine—which at the time, had been providing Rutherford County Adult Detention Center with multiple services, including inmate commissary services and kiosks, but not postal-mail-elimination technology—to partner and work with Smart Communications with the goal of bringing Smart Communications' patented MailGuard® technology into the Rutherford County Adult Detention Center correctional facility by way of an integrated platform. *See* June 14, 2017 email from Rob Deglman (Smart Communications' Director of Sales and Marketing) to Silas Deane (VendEngine's President and CEO) (attached as Ex. A).

15. After the execution of the Agreement, several conversations, and exchanges of correspondence between VendEngine and Smart Communications regarding the implementation of MailGuard® at the Rutherford County Adult Detention Center, both VendEngine and the Rutherford County Adult Detention Center abruptly ceased all discussions with Smart Communications.

16. Subsequently, in June 2018, VendEngine announced that it was launching—and that the Rutherford County Adult Detention Center would be implementing—VendEngine's new digital "MailRoom" application. *See* Press Release, VendEngine, VendEngine Launches New Digital MailRoom Application for the Corrections Marketplace (June 21, 2018) (attached as Ex. B).

17. Upon information and belief, Rutherford County and the Rutherford County Adult Detention Center did, in fact, implement VendEngine's new MailRoom application, as confirmed in that same June 2018 VendEngine press release by then-chief of the Rutherford County Adult

Detention Center, Bernard Salandy. *See id.* In fact, Mr. Salandy—who was present at the above-described meeting between Smart Communications, Rutherford County, and the Rutherford County Adult Detention Center, and who is now Vice President of Business Development at VendEngine—referred to VendEngine's MailRoom application as "groundbreaking." *See* Joel Stinnett, *How this Nashville company's technology is reducing inmate drug use*, Nashville Business Journal (Feb. 6, 2018), https://www.bizjournals.com/nashville/news/2018/02/06/how-this-nashvillecompany-s-technology-is-reducing.html (attached as Ex. C). But upon information and belief, VendEngine's purportedly "groundbreaking" technology is nothing more than a knock-off of Smart Communications' electronic-messaging technology and its patented MailGuard Postal Mail Elimination® system that VendEngine copied after learning about it and seeing how valuable it would be to the Rutherford County Adult Detention Center.

18.  Upon information and belief, the VendEngine MailRoom application that Rutherford County and the Rutherford County Adult Detention Center implemented, and continue to use, provides, among other things, "a mail scanning solution for onsite management . . . to process and handle the digitization of all [postal] mail. Scans are then digitized and uploaded to the jail's accounts for review and delivery." *See* Press Release, VendEngine, VendEngine Opens Mail Processing Center for Correctional Facilities (Apr. 29, 2019) (attached as Ex. D). In addition, upon information and belief, once the physical mail has been scanned in and digitized, an electronic copy is made available for the intended inmate recipient to view directly on remote kiosks. *See* VendEngine's Product Overview Booklet, http://www.vendengine.com/product-overview-booklet/ (last visited February 5, 2020) (attached as Ex. E). Upon information and belief, the above-described system also enables a correctional facility to "flag" for review and potentially

withhold from the intended inmate recipient any physical mail determined to contain contraband or other inappropriate content. *See id.*

## COUNT ONE:
## BREACH OF CONTRACT: INJUNCTIVE RELIEF

19. Smart Communications repeats and realleges paragraphs 1-18 above as if fully set forth herein.

20. The non-use provisions of the Agreement are valid and enforceable.

21. VendEngine has breached and continues to breach the Agreement by having exploited and continuing to exploit commercially for its own use Smart Communications' confidential information disclosed to it pursuant to the Agreement, in violation of the valid and enforceable non-use provisions of the Agreement.

22. Such conduct has caused and will continue to cause immediate and irreparable harm to Smart Communications, for which Smart Communications is entitled to injunctive relief, both preliminary and permanent.

23. Smart Communications has no adequate remedy at law for the immediate and irreparable harm it will suffer to its business operations, business goodwill, and existing and prospective customer relationships.

24. The Agreement acknowledges that a breach of any provision would cause irreparable harm to the non-breaching party for which money damages would be an insufficient remedy and that the non-breaching party therefore is entitled to seek immediate injunctive relief prohibiting the ongoing breach.

## COUNT TWO:
## BREACH OF CONTRACT: DAMAGES

25. Smart Communications repeats and realleges paragraphs 1-24 above as if fully set forth herein.

26. The non-use provisions of the Agreement are valid and enforceable.

27. VendEngine has breached and continues to breach the Agreement by having exploited and continuing to exploit commercially for its own use Smart Communications' confidential information disclosed to it pursuant to the Agreement, in violation of the valid and enforceable non-use provisions of the Agreement.

28. Such conduct has caused and continues to cause Smart Communications substantial injury for which it is entitled to compensatory damages and reasonable attorneys' fees in an amount to be proven at trial.

## COUNT THREE:
## TORTIOUS INTERFERENCE WITH PROPOSECTIVE BUSINESS RELATIONSHIPS

29. Smart Communications repeats and realleges paragraphs 1-28 above as if fully set forth herein.

30. Smart Communications had a prospective business relationship with Rutherford County and Rutherford County Adult Detention Center to implement Smart Communications' MailGuard Postal Mail Elimination® and electronic-messaging system at the Rutherford County Adult Detention Center.

31. VendEngine knew about Rutherford County's and Rutherford County Adult Detention Center's desire to implement Smart Communications' MailGuard Postal Mail Elimination® and electronic-messaging system at the Rutherford County Adult Detention Center, as evidenced by at least the June 14, 2017 email from Rob Deglman (Smart Communications'

Director of Sales and Marketing) to Silas Deane (VendEngine's President and CEO), that copied Bernard Salandy (then-Chief of Rutherford County Adult Detention Center and now-Vice President of Business Development at VendEngine) stating:

> "Good Afternoon Silas,
>
> I wanted to take this opportunity to introduce myself and reach out to you to attempt to schedule a call to discuss Rutherford County.
>
> I spoke with Chief Salandy today and he is anxious for us to work out the details so we can implement our suite of services including MailGuard.
>
> I would like to have a discussion with you if you can provide me a day-time that would be convenient for you.
>
> I am scheduled to get back with Chief Salandy on Friday so the sooner we can get together, the better.
>
> Thanks,
> rob"

32. In June 2017, VendEngine already had a business relationship with Rutherford County, as VendEngine had been providing Rutherford County Adult Detention Center with multiple services, including inmate commissary services and kiosks. Notably, at that time, VendEngine did not offer and did not provide postal-mail-elimination technology to any customer.

33. VendEngine intentionally and tortiously intended to interfere and interfered in Smart Communications' prospective relationship with Rutherford County and Rutherford County Adult Detention Center, as demonstrated by the fact that VendEngine intentionally engaged in several conversations and exchanges of correspondence with Smart Communications regarding its proprietary postal-mail-elimination system's technology and prospective implementation at the Rutherford County Adult Detention Center, and then abruptly ceased all communications with Smart Communications just prior to launching its own version of postal-mail-elimination technology for correctional facilities at Rutherford County Adult Detention Center.

8

34. VendEngine acted with improper motive and/or improper means as evidenced by its actions of engaging in a series of communications to gather confidential information from Smart Communications about its proprietary electronic-messaging system and postal-mail-elimination technology under the guise that the two companies were working together to integrate Smart Communications' postal-mail-elimination technology into VendEngine's then-existing technology services' platform which then-lacked such capabilities and on behalf of Rutherford County Adult Detention Center. VendEngine's decision to terminate its communications with Smart Communications abruptly and without any good cause conveniently coincided with its development and launch of its competitive postal-mail-elimination technology that it never had before offered to its customers, including Rutherford County Adult Detention Center.

35. As a result of VendEngine's tortious interference, Smart Communications has suffered injury in the form of lost opportunities of business, lost value of its proprietary MailGuard Postal Mail Elimination® and electronic-messaging system, and monetary damages in an amount to be proven at trial.

## COUNT FOUR: VIOLATION OF THE TENNESSEE UNIFORM TRADE SECRETS ACT

36. Smart Communications repeats and realleges paragraphs 1-35 above as if fully set forth herein.

37. The Agreement is valid and enforceable.

38. The Agreement sets forth various categories of protected confidential information.

39. The Agreement further includes provisions that the disclosing party's confidential information remains the property of the disclosing party.

40. The Agreement further provides that each party will keep the other party's confidential information in confidence.

41. The Agreement further provides that no party will exploit commercially the other party's confidential information.

42. At least Smart Communications' business plans and strategies, methods of doing business and dealings with customers, customer names and addresses, procurement and purchasing requirements, marketing strategies, pricing methods, training and operational procedures and guidance, technical information, proprietary processes and methodologies used, possessed, and misappropriated by VendEngine constitute Smart Communications' trade secrets within the purview of the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. §§ 47-25-1701 *et seq*. including § 47-25-1702(4).

43. Smart Communications' information is confidential, proprietary, and protectable because it derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use and the information was the subject of efforts reasonable under the circumstances by Smart Communications to maintain its confidentiality.

44. Based on information and belief, VendEngine has misappropriated Smart Communications' trade secrets, as defined in Tenn. Code Ann. § 47-25-1702(2), in violation of the Tennessee Uniform Trade Secrets Act.

45. VendEngine obtained knowledge of Smart Communications' confidential and proprietary information as a result of the confidential relationship it enjoyed with Smart Communications, which gave rise to a duty on its part to maintain the secrecy of such information.

46. VendEngine's acts in misappropriating Smart Communications' trade secrets has been and continue to be undertaken without the express or implied consent of Smart Communications.

47. Smart Communications is suffering and will continue to suffer irreparable injury if VendEngine is permitted to continue its ongoing violations of the Tennessee Uniform Trade Secrets Act and continues to profit, to Smart Communications' detriment from VendEngine's violation of the Tennessee Uniform Trade Secrets Act.

48. Pursuant to T.C.A. § 47-25-1703, Smart Communications is entitled to injunctive relief prohibiting the actual or threatened misappropriation of its trade secrets.

49. VendEngine's misappropriation of Smart Communications' trade secrets will cause, and has already caused, Smart Communications the loss of sales, profits, goodwill, and other commercial benefits, for which Smart Communications is entitled to relief. Smart Communications is therefore entitled to recover all monetary damages it has suffered as a result of VendEngine's misappropriation and conversion of Smart Communications' confidential and proprietary information.

50. VendEngine's action in misappropriating Smart Communications' trade secrets was willful and malicious thereby entitling Smart Communications to recover exemplary damages under T.CA. § 47-25-1704(b).

### COUNT FIVE: <u>AWARD OF ATTORNEYS' FEES</u>

51. Smart Communications repeats and realleges paragraphs 1-50 above as if fully set forth herein.

52. VendEngine has misappropriated trade secrets in violation of the Tennessee Uniform Trade Secrets Act, § 47-25-1701 *et seq*.

53. Smart Communications is entitled to an award of litigation expenses, including reasonable attorneys' fees, against VendEngine under the Tennessee Uniform Trade Secrets Act, § 47-25-1705(3) based on VendEngine's willful and malicious misappropriation.

## COUNT SIX:
## UNJUST ENRICHMENT

54. Smart Communications repeats and realleges paragraphs 1-53 above as if fully set forth herein.

55. By reason of Smart Communications providing substantial confidential and proprietary information to VendEngine, Smart Communications has conferred substantial benefits upon VendEngine.

56. VendEngine has accepted, retained, and been enriched by these benefits under such circumstances that it would be unjust for it to retain the benefits without the payment of value.

57. By reason of the foregoing, VendEngine has been unjustly enriched in an amount to be proven at trial.

## COUNT SEVEN:
## NEGLIGENT MISREPRESENTATION

58. Smart Communications repeats and realleges paragraphs 1-57 above as if fully set forth herein.

59. VendEngine had a pecuniary interest in receiving information from Smart Communications regarding the prospective business relationship with Rutherford County Adult Detention Center and Smart Communications' proprietary MailGuard Postal Mail Elimination® and electronic-messaging system.

60. VendEngine misrepresented to Smart Communications the nature and purpose of the proposed business relationship between VendEngine and Smart Communications. Specifically,

the representations that the relationship would be based on a mutual exchange of information and that VendEngine would keep confidential and not commercially exploit Smart Communications' confidential and proprietary information were false and duplicitous pretexts by which VendEngine gained access to Smart Communications' confidential and proprietary information.

61. Smart Communications justifiably relied on VendEngine's misrepresentations when it granted it access to its confidential and proprietary information.

62. VendEngine failed to keep confidential and not exploit Smart Communications confidential and proprietary information.

63. VendEngine intended to obtain and use Smart Communications' confidential and proprietary information for its own benefit.

64. Smart Communications justifiably relied on the false information supplied to it by VendEngine, namely that the confidential and proprietary information provided by Smart Communications to VendEngine would be held in confidence and not exploited.

65. VendEngine failed to exercise reasonable care in maintaining in confidence Smart Communications' confidential and proprietary information.

66. As a direct and proximate result of VendEngine's negligent misrepresentation, Smart Communications has suffered and continues to incur damages in an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

Smart Communications hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Smart Communications respectfully requests that this Court enter judgment in its favor as follows:

A. Finding the Agreement is valid and enforceable;

B. Entering a judgment in favor of Smart Communications and against VendEngine on all counts included in this Complaint;

C. Preliminarily and permanently enjoining VendEngine, its agents, and all those in active concert with them, from making use for the benefit of themselves, Smart Communications' proprietary and confidential information;

D. Awarding Smart Communications monetary damages in an amount to be determined at trial in excess of $75,000.00;

E. Awarding Smart Communications exemplary damages in an amount to be determined at trial;

F. Awarding Smart Communications its costs of suit, including reasonable attorneys' fees to the extent provided by law, and pre- and post-judgement interest at the highest legal rate allowed by law; and

G. Awarding such other and further relief that the Court may deem appropriate and just under the circumstances.

Dated: February 7, 2020

Respectfully submitted,

*/s/ DRAFT*
Gregory S. Reynolds
State Bar No. XXX
greynolds@rwjplc.com
J. David Clark
State Bar No. XXX
dclark@rwjplc.com
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
Telephone: (615) 320-3700
Facsimile: (615) 320-3737

14

Case 3:20-cv-00111   Document 6   Filed 02/07/20   Page 14 of 15 PageID #: 54

Katrina M. Quicker (*pro hac vice* forthcoming)
kquicker@bakerlaw.com
Jason P. Grier (*pro hac vice* forthcoming)
jgrier@bakerlaw.com
Baker & Hostetler LLP
1170 Peachtree Street, NE, Suite 2400
Atlanta, GA 30309-7676
Telephone: (404) 459-0050
Facsimile: (404) 459-5734

*Attorneys for Smart Communications*